STATE OF DELAWARE,
Plaintiff,

*vs.*

PHILLIP KLEIN, trading as Phil's Distributors,
Defendant.

*New Castle, June 26, 1956.*

*H. James Conaway, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*David Snellenburg, II,* of Killoran & VanBrunt, Wilmington, for defendant.

SEITZ, Chancellor: This is the decision on an attachment or rule to show cause why defendant should not be held in criminal contempt for an alleged violation of a consent permanent injunction dated September 22, 1954. While the State is technically the plaintiff I shall refer to the original plaintiff, General Electric, when using "plaintiff" herein. The judgment restrained, *inter alia,* the selling of fair traded merchandise produced or distributed by the plaintiff under the trademark "General Electric" at prices less than the prices stipulated in plaintiff's fair trade contracts as then constituted and as supplemented.

Plaintiff alleges that as of January 1, 1956, it placed radios, including Model 913, on fair trade and so notified defendant; that prior thereto such radios were not fair traded. Plaintiff contends that despite these facts the defendant on March 16, 1956 offered for sale and sold two Model 913 radios below the resale prices established therefor. Plaintiff charges that these sales constituted a violation of this Court's permanent injunction.

Since defendant is charged with criminal contempt his guilt must be proved beyond a reasonable doubt. *State v. Nouris,* 15 *Del.Ch.* 282, 136 *A.* 887. Let us consider the evidence in the light of that requirement.

Defendant first contends that there was no proof offered that there existed on March 16, 1956 (the date of the sales) an agreement or contract made by plaintiff with retail dealers in Delaware under the authority of the Fair Trade Statute. Plaintiff contends that defendant cannot challenge the validity of the injunction in this manner. In view of my conclusion I need not decide this point.

Clearly a fair trade contract for Delaware was proved when the permanent injunction of September 22, 1954, was issued. That contract provided that it should continue in force until terminated by either party upon ten days' written notice. In view of the type of agreement, the not unreasonable length of time since the contract was proved against this very defendant, and additional facts, some of which are hereafter stated, I believe the presumption of the continuance of this contract was sufficiently established even for a criminal proceeding. Compare *Donner v. Calvert Distillers Corp.,* 196 *Md.* 475, 77 *A.2d* 305.

Defendant next argues that plaintiff failed to prove the publication of the minimum resale price list applicable to these particular radios. Plaintiff proved the receipt by the defendant of written notice that the plaintiff's fair trade program was continuing and that as of January 1, 1956, radios were added thereto. A notice and a new price list were sent to defendant prior to the crucial date. The proof advanced by plaintiff was sufficient. Indeed, the defendant testified

that he knew that plaintiff's radios were fair traded as of March 16, 1956.

Defendant next contends that the radios sold on March 16, 1956, were radios purchased either prior to January 1, 1956 or received in exchange for ones purchased before that date. From these factual premises he argues that the sales were not covered by the Act or the injunction.

Let us first consider whether the Fair Trade Act has any application to commodities acquired for resale before a fair trade policy is imposed with respect to such property. It is important to note that we are not at this point concerned with a case where a party purchases commodities for resale purposes at a time when there is in existence a fair trade policy with respect to such commodities and the question is whether the reseller had notice. Such was the situation in the cases cited by plaintiff, *Barron Motor v. May's Drug Stores,* 227 *Iowa* 1344, 291 *N.W.* 152; *Calvert Distillers Corporation v. Goldman,* 255 *Wis.* 69, 37 *N.W.2d* 859.

At this point in the decision we must accept as fact that defendant obtained complete and absolute title to certain Model 913 radios prior to the date when plaintiff imposed its fair trade policy with respect to such models. Our Fair Trade Act, 6 *Del.C.* § 1901, *et seq.* deals only with contracts between the owner or distributor of a commodity and one who is purchasing for resale purposes. As I read the statute, commodities sold for resale before there is a fair trade contract in existence covering such commodities are not covered. Certainly the statute should not be construed to permit the making of contracts having retroactive effect against non-signers in the absence of the clearest language to that effect. I say this for two reasons. First, such an interpretation would have inequitable consequences. A reseller in this position is financially committed before the policy comes into being. He presumably commits himself in partial reliance upon his freedom to fix the resale price. He is not like the potential reseller who knows the resale price before he purchases. Such a person is free to make his decision before committing himself. To apply fair trade prices to commodities acquired

before the imposition of a fair trade price would be to change the rules of the game retroactively. A second reason militating against a construction which would warrant a retroactive application lies in the serious constitutional doubt which such a construction of the statute would create.[1]

I therefore conclude that property acquired for resale prior to the imposition of a fair trade policy with respect to such property is not subject to the provisions of the fair trade. law. Since the permanent injunction in effect spoke in terms of the statute as here construed, I conclude that the sale of such property by defendant below plaintiff's minimum resale price was not prohibited by the outstanding permanent injunction.

This brings us to a consideration of plaintiff's contention that at least one of the two Model 913 G. E. radios sold by defendant on March 16, 1956, below the established resale price, could not possibly have been obtained by defendant prior to the date plaintiff imposed his fair trade policy with respect to such radios. Plaintiff proved beyond any doubt that one of the radios sold on March 16, was not manufactured until February 17, 1956. Defendant explicitly denies that he purchased any Model 913 G. E. radio after January 1, 1956. He explains the particular sale by conjecturing that this particular radio must have been one received in exchange for one purchased prior to January 1, 1956. It appears that it is common practice for a distributor to exchange sets which are defective or where a different color is desired. Defendant conjectures that he must have gotten this radio model in question in some such manner since, he testified, he made some color exchanges.

I find it unnecessary to evaluate defendant's evidence because, assuming it to be true, plaintiff has still shown a violation of the injunction. Defendant is charged with the knowledge that at the time he acquired the radio it was subject to fair trade because defendant was then fully aware of plaintiff's fair trade policy with respect to such radios. Thereafter, he sold the radio below the min-

1. Compare *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.,* 299 *U.S.* 183, 57 *S.Ct.* 139, 81 *L.Ed.* 109.

imum resale price. He was then fully conscious of the terms of the outstanding injunction. He does not rely upon mistake. Plaintiff thus showed beyond reasonable doubt that defendant violated the terms of the injunction. If defendant felt that the injunction operated inequitably in this situation he was free to apply for its modification. At an earlier stage the defendant followed that procedure when he felt that the present injunction operated inequitably as applied to another situation.

Defendant's contempt has been proved beyond reasonable doubt. The parties will be heard before sentence is imposed.

Order on notice.